IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICHAEL DELLINGER                                                                                          PLAINTIFF

v.                         Civil No. 4:22-CV-04115-SOH-BAB

BOBBY WALRAVEN, Sheriff, Little River County;
GINA BUTLER, Jail Administrator, Little River County;
MARIAN HOPKINS, Correctional Officer, Little River County Jail;
DR. ELKINS, Little River County Jail; and
LITTLE RIVER COUNTY JAIL ADMINISTRATION,
                                                                                                        DEFENDANTS.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Michael Dellinger filed the above-captioned civil rights action under 42 U.S.C. § 1983 for an incident that allegedly occurred when he was a pretrial detainee at the Little River County Detention Center (LRCDC), Ashdown, Arkansas.[1] (ECF Nos. 2 & 9) Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purposes of making a Report and Recommendation. This Court previously granted Plaintiff's application to proceed *in forma pauperis* (IFP). (ECF No. 6)

This matter is now before the Court for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon that review and

---

[1] Plaintiff was subsequently convicted and sentenced on state criminal charges. *See State v. Dellinger*, 41CR-22-64 (Ark. Cir. Ct., May 6, 2022); *State v. Dellinger*, 41CR-22-88 (Ark. Cir. Ct. June 27, 2022) (Ark. Court Connect) (last visited Jan. 17, 2023). Plaintiff is now a prisoner at the North Central Unit state prison in Calico Rock, Arkansas. (ECF No. 9 at p. 1).

1

for the reasons outlined below, this Court recommends that Plaintiff's claims against Dr. Elkins and Jail Administrator Gina Butler in their individual capacities proceed and all other claims be dismissed without prejudice.

## I. BACKGROUND

Plaintiff initially filed his Complaint in the Eastern District of Arkansas. (ECF No. 2) Venue, however, is proper in the judicial district where "any defendant resides" or where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). Although Plaintiff is now a prisoner at the North Central Unit, an Arkansas state prison in the Eastern District of Arkansas, Plaintiff's claims arose from his pretrial detention at the LRCDC, which is in this District. Accordingly, the Eastern District of Arkansas properly transferred Plaintiff's Complaint to this District. (ECF No. 3).

Upon transfer, this Court ordered Plaintiff to file an Amended Complaint on this District's court-approved § 1983 form. (ECF No. 7). The Court received Plaintiff's amended complaint, but the claims and defendants are slightly different from those articulated in the original complaint. Rather than direct Plaintiff to submit a second amended complaint, however, this Court construes Plaintiff's claims by reading the original complaint and First Amended Complaint together. *See Kirr v. North Dakota Public Health*, 651 F. App'x 567, 568 (8th Cir. 2016) (concluding that pro se plaintiff's original complaint and two amendments "should have been read together" as constituting his complaint); *Cooper v. Schriro*, 189 F.3d 781, 783 (8th Cir. 1999) (per curiam) (pro se complaint must be liberally construed and plaintiff clearly intended for amended complaint to be read together with original complaint).

First, Plaintiff alleges that when he was arrested in July 2022, he had his insulin to treat his

diabetes with him. (ECF No. 2 at p. 4). According to Plaintiff, he paid for the insulin with his own money, but when he arrived at the LRCDC, the defendants broke it, leaving him in custody without any insulin. (ECF No. 2 at p. 4). In his amended complaint, Plaintiff specifically alleges that Dr. Elkins broke his insulin. (ECF No. 9 at p. 4).

Second, Plaintiff claims that on July 25, 2022, his blood sugar levels registered at about 500 and he passed out, because Dr. Elkins refused him medical treatment. (ECF No. 9 at p. 4). Plaintiff claims that an ambulance was called to respond to the situation. *Id.* Plaintiff alleges that earlier in the day, Dr. Elkins tried to give him someone else's insulin; in his original complaint he identifies the insulin as originally belonging to Correctional Officer Marian Hopkins. (ECF No. 2 at p. 4). Plaintiff claims that his blood sugar levels continued to fluctuate from as low as 54 to as high as 595, but Dr. Elkins denied him any treatment. *Id.* According to Plaintiff, if blood sugar levels exceed 240, the body risks going into "diabetic ketoacidosis," which causes a diabetic coma. (ECF No. 9 at p. 4). Although Plaintiff contends that he eventually received new medication, he was required to pay for it even though he was told he would not have to pay because he was not liable. *Id.*

Third, Plaintiff claims that he wrote Jail Administrator Gina Butler several grievances about being denied proper medical care, but she neglected to do anything about it. (ECF No. 9 at p. 6). Finally, Plaintiff claims that Little River Sheriff Walraven failed to provide him with proper medical care in violation of his constitutional rights. Plaintiff names all the defendants in their official and individual capacities and requests compensatory damages for his medical bills and legal fees and punitive damages for pain and suffering. (ECF No. 9 at p. 9). In his original complaint, Plaintiff also requests injunctive and declaratory relief. (ECF No. 2 at p. 5).

## II. LEGAL STANDARD

Under PLRA, the Court is obligated to review the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pro se complaint, moreover, is to be given liberal construction, meaning "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, "they still must allege sufficient facts to support the claims advanced." *Id.* at 914 (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III. DISCUSSION

The essential elements of a § 1983 claim are "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Vista*, 557 F.3d 564, 571 (8th Cir. 2009). To state a claim, moreover, the plaintiff must establish that each defendant "personally violated plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citation omitted).

### A. Property Loss

Plaintiff's first claim concerns the loss of his property: specifically, his insulin medication. (ECF Nos. 2 & 9). The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Courts have interpreted procedural due process considerations as imposing "constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Assuming, without deciding, that Plaintiff has a recognized property interest in his insulin, the question, then becomes what process Plaintiff is owed for the loss of that property.

In answering this question, the Supreme Court has usually held that "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "In some circumstances, however, the Court has held that a statutory provision for a post deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128. The Supreme Court has held, moreover, that such circumstances include "cases where the predicate deprivation is, or is akin to, a tortious loss of a prisoner's property resulting from a random unauthorized act by a state employee—versus some established state procedure." *Walters*, 660 F.3d at 312 (quoting *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). "The loss of property . . . is in almost all cases beyond the control of the [government], in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the

5

deprivation." *Id.*

This is exactly one such case. Assuming Plaintiff has a property interest in his insulin and Dr. Elkins deprived him of his property when he broke his insulin, a post-deprivation hearing is all the process Plaintiff is due. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available). Arkansas law provides such a post-deprivation remedy through an action for conversion. *See e.g., Elliott v. Hurst*, 817 S.W.2d 877, 880 (Ark. 1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). Accordingly, Plaintiff's claim concerning the loss of his insulin does not establish a cognizable § 1983 claim. The Court therefore recommends that this claim be dismissed without prejudice.

**B. Medical Indifference**

Plaintiff also claims that Dr. Elkins denied him proper medical care. As a pretrial detainee at the time, Plaintiff's right to medical care arises out of the Fourteenth Amendment." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). Because the Fourteenth Amendment "affords pre-trial detainees at least as much protection as the Eighth Amendment does to convicted prisoners," *Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006), courts apply the Eighth Amendment's "deliberate indifference" standard in determining whether there has been a constitutional violation in delaying a pretrial detainee's access to medical care. *Id.*

The Eighth Amendment "deliberate-indifference" standard involves objective and subjective components. *See Jolley v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). Specifically, "the plaintiff must demonstrate (1) that he suffered from objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v.*

6

*Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). To be objectively serious, "a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jackson*, 756 F.3d at 1065 (quoting *Scott v. Benson*, 742 F.3d 335, 339-40 (8th Cir. 2014)). To evince "deliberate indifference" under the second prong, moreover, the Plaintiff must "show more than negligence, more even than gross negligence." *Id.* (quoting *Fourte v. Falkner Cnty.*, 746 F.3d 384, 387 (8th Cir. 2014)). "An inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id.* at 1066 (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997)).

For the purposes of preservice screening under 28 U.S.C. § 1915A(a), this Court cannot conclude that Plaintiff has not established a medical indifference claim against Dr. Elkins as a matter of law. Therefore, this Court does not recommend that this claim be dismissed at this stage of the proceedings.

### C. Jail Administrator Gina Butler

Turning now to Plaintiff's claims against Jail Administrator Gina Butler, liability in a § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In a § 1983 action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009). Accordingly, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)).

To be liable for violating a person's constitutional rights on a "failure to supervise" theory, the plaintiff must show that the defendant: "(1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused [plaintiff's] injury." *Id.* at 1002 (citing *Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990)). Further, a supervisor's failure to train may be subject to § 1983 liability where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *Id.* (quoting *Otey*, 121 F.3d at 1156)). In such a case, the plaintiff must show that the alleged failure to train "actually caused" the constitutional deprivation." *Id.*

Here, Plaintiff does not allege that Jail Administrator Gina Butler failed to provide him with proper medical care; rather, as the Court understands it, he alleges that she failed to do anything about his allegedly constitutionally deficient medical care when he brought the problem to her attention through the grievance process. (ECF No. 9 at p. 6). At this stage in the proceedings, the Court does not recommend that this claim be dismissed as a matter of law. In making this recommendation, this Court intimates no opinion about the merits of such a claim.

**D.  Official Capacity Claims Against Dr. Elkins and Jail Administrator Gina Butler**

Plaintiff, however, names Dr. Elkins and Jail Administrator Gina Butler as defendants in their individual and official capacities. (ECF No. 2 at p. 5; ECF No. 9). An official capacity claim is the functional equivalent of a suit against the defendant's employer, or, in this case, Little River County. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998). To sustain such a claim, a plaintiff must allege the existence of a custom or policy that was the moving force

8

behind the alleged constitutional violations. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). Plaintiff's complaint falls short. There are no allegations that either Dr. Elkins or Jail Administrator Gina Butler was acting pursuant to policy or custom in purportedly denying Plaintiff medical care in violation of his constitutional rights. Thus, no official capacity claim has been plead in the complaint. Accordingly, it is recommended that any claim against Dr. Elkins and Gina Butler in their official capacities be dismissed.

### E. Claims Against Little River County Sheriff Bobby Walraven, Correctional Officer Marian Hopkins, and Little River County Jail Administration

Plaintiff's complaint names Little River County Sheriff Bobby Walraven, Correctional Officer Marian Hopkins, and Little River County Jail Administration as defendants. Claims against these defendants should be dismissed as a matter of law.

First, Plaintiff alleges that Sheriff Walraven failed to provide him with proper care. (ECF No. 9 at 8). Even after reading the two pleadings together, Plaintiff does not offer any specific, particularized facts suggesting how Sheriff Walvraven allegedly violated his constitutional rights. Such broad, conclusory allegations are insufficient to state a claim under § 1983. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions."). Moreover, the theory of respondeat superior—that Sheriff Walraven, as a supervisor, is generally responsible for the torts of his subordinates—is not a basis for liability under 42 U.S.C. § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Kulow v. Nix*, 28 F.3d 855, 858 (8th Cir. 1994)). Similarly, Plaintiff's general allegation that "jail administration," an entity purportedly consisting of multiple jail personnel, violated his constitutional rights is not sufficiently specific as to who in Jail Administration did what in alleged violation of his constitutional rights to state a plausible § 1983

9

claim. *See also Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (a jail is not a person subject to suit under § 1983).

Finally, although Plaintiff alleges that Dr. Elkins gave him the insulin that originally belonged to Correctional Officer Marian Hopkins, he fails to allege how this defendant was directly involved in or responsible for the alleged violation of his constitutional right to proper medical care. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). Accordingly, the Court recommends that any claims against these defendants—Little River County Sheriff Bobby Walraven, Correctional Officer Marian Hopkins, and the Little River County Jail Administration—be dismissed for failure to state a claim as a matter of law. 28 U.S.C. § 1915A(b)(1).

### F. Injunctive and Declarative Relief

Finally, in addition to compensatory and punitive damages, Plaintiff requests injunctive and declarative relief. (ECF No. 2 at p. 5).

#### 1. *Injunctive Relief*

In considering a motion for injunctive relief, courts consider: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113.

Here, it is undisputed that Plaintiff is no longer being detained at the LRCDC. (ECF No. 9 at pp. 1-2). Accordingly, Plaintiff is no longer subject to the purportedly unconstitutional conditions that gave rise to his complaint. Thus, it cannot be said that Plaintiff currently faces irreparable harm absent court intervention. *See Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (noting that failure to show irreparable harm "is an independently sufficient ground upon which to deny a preliminary injunction."). Therefore, this Court recommends that Plaintiff's request for injunctive relief be denied as moot.

### 2. *Declaratory Relief*

This Court views Plaintiff's request for "declaratory relief" as a request for a declaratory judgment. "A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply proclaim liability for a past act." *Justice Network, Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019) (quoting *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) (emphasis in the original)). "Thus, declaratory relief is limited to *prospective* declaratory relief." *Id.* at 764.

Here, again, because Plaintiff has transferred to a different facility, he is no longer subject to the same conditions that gave rise to the complaint. Accordingly, prospective relief is no remedy at all. This Court, therefore, recommends that Plaintiff's request for declaratory relief be denied as moot.

### IV. CONCLUSION

In sum, having reviewed Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, this Court recommends that: Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE, EXCEPT** –

1. Plaintiff's medical indifference claim against Dr. Elkins in his individual capacity;

11

2. Plaintiff's "failure to train or supervise" claim against Jail Administrator Gina Butler in her individual capacity.

This Court further recommends that Plaintiff's request for Injunctive and Declaratory Relief be **DENIED AS MOOT**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 23rd day of January 2023.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE